E-FILED
Thursday, 16 January, 2020  03:57:59 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| DR. DONALD D. OWEN | |
| Plaintiff, | |
| v. | Case No. |
| URBANA SCHOOL DISTRICT #116, JOHN H. DIMIT, BENITA ROLLINS-GAY, ANNE HALL, RUTH ANN FISHER, BRENDA CARTER, PAUL POULOSKY, and PEGGY PATTON, | Judge |
| | Magistrate Judge |
| Defendants. | |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants, URBANA SCHOOL DISTRICT #116, JOHN H. DIMIT, BENITA ROLLINS-GAY, ANNE HALL, RUTH ANN FISHER, BRENDA CARTER, PAUL POULOSKI, and PEGGY PATTON, by and through their attorneys, Robbins Schwartz Nicholas Lifton & Taylor, Ltd., hereby remove Case No. 2019 L 000193 from the Circuit Court of the Sixth Judicial Circuit, Champaign County, Illinois, to the United States District Court for the Central District of Illinois, Urbana Division, pursuant to 28 U.S.C. Sections 1331, 1441, and 1446, and as grounds for its removal state as follows:

1.     On November 25, 2019, Plaintiff Dr. Donald D. Owen (hereinafter "Plaintiff") filed a Complaint against Defendants alleging that Defendants violated his rights under Title VII of the Civil Rights Act and the Illinois Human Rights Act.

2.     The Complaint contains a single Count, "COUNT I", subtitled "Retaliation-Illinois Human Rights Act/Title VII of the Federal Civil Rights Act".

**Original Jurisdiction Under 28 U.S.C. Section 1331**

3.      The United States District Court for the Central District of Illinois has jurisdiction pursuant to 28 U.S.C. Section 1331 because the sole Count I of the Complaint purports to arise under the laws of the United States, namely Title VII of the Civil Rights Act.  28 U.S.C. § 1331.

4.      The federal statute authorizing supplemental jurisdiction provides in pertinent part:

> …[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  For supplemental jurisdiction to be found, both the state and federal claims must derive from a "common nucleus of operative fact."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

5.      In this case, all claims against all Defendants arise from a "common nucleus of operative facts" and thus, this Court can exercise supplemental jurisdiction over Plaintiff's state law claims pled under the IHRA.

**All Procedural Requirements for Removal have been Satisfied**

6.      Pursuant to 28 U.S.C. Section 1446(a), a true and correct copy of all the process, pleadings, orders and documents from the case before the Circuit Court of Champaign County that have been served upon Defendants are being filed with this Notice of Removal as Exhibit A.

7.      This Notice of Removal has been filed within 30 days of the date that the Complaint was served on or received by Defendants.  Defendants accepted service of the Complaint through their attorneys on December 18, 2019.  Removal is therefore timely in accordance with 28 U.S.C. Section 1446(b).

8.      Venue is proper in this Court pursuant to 28 U.S.C. Sections 1441(a) and 1446(a), and Local Rule 40.1(D), because the U.S. District Court for the Central District of Illinois, Urbana Division is the federal district court embracing the Circuit Court of Champaign County, Illinois where the Complaint was originally filed.

WHEREFORE, Defendants, URBANA SCHOOL DISTRICT #116, JOHN H. DIMIT, BENITA ROLLINS-GAY, ANNE HALL, RUTH ANN FISHER, BRENDA CARTER, PAUL POULOSKI, and PEGGY PATTON, remove this matter pursuant to 28 U.S.C. Sections 1331, 1441, and 1446.

Dated: January 16, 2020

Respectfully submitted,

**URBANA SCHOOL DISTRICT #116, JOHN H. DIMIT, BENITA ROLLINS-GAY, ANNE HALL, RUTH ANN FISHER, BRENDA CARTER, PAUL POULOSKI, and PEGGY PATTON**

By: s/ Frank B. Garrett III
         One of Defendants' Attorneys

Frank B. Garrett III (6192555)
fgarrett@robbins-schwartz.com
**ROBBINS SCHWARTZ NICHOLAS LIFTON & TAYLOR, LTD.**
55 West Monroe Street, Suite 800
Chicago, Illinois 60603-5144
Telephone (312) 332-7760
Fax (312) 332-7768

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **Defendants' Notice of Removal** with the Clerk of the Court using the CM/ECF system on this 16th day of January, 2020, which constitutes service on all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b) and L.R. 59.  I further certify that I placed a copy of this Defendants' Notice of Removal in the U.S. Mail, and sent via e-mail, addressed to the following:

> Mr. Ronald S. Langacker
> Langacker Law, Ltd.
> 210 N. Broadway Ave.
> Urbana, IL  61801
> ron@langackerlaw.com

s/ Frank B. Garrett III
One of the Defendants' Attorneys

# EXHIBIT A

FILED
SIXTH JUDICIAL CIRCUIT
11/25/2019 10:38 AM
By: AL

*Katie M. Blakeman*
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT**
**CHAMPAIGN COUNTY, ILLINOIS**

| | | |
|---|---|---|
| **DR. DONALD D. OWEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | |
| | ) | |
| **URBANA SCHOOL DISTRICT #116,** | ) | 2019L 000193 |
| **JOHN H. DIMIT, BENITA ROLLINS-GAY,** | ) | |
| **ANNE HALL, RUTH ANN FISHER,** | ) | |
| **BRENDA CARTER, PAUL POULOSKY,** | ) | |
| **and PEGGY PATTON,** | ) | |
| | ) | **JURY TRIAL** |
| **Defendants.** | ) | **DEMANDED** |

## COMPLAINT AT LAW

NOW COMES Plaintiff, Dr. Donald D. Owen, by and through his attorney, Ronald S. Langacker of Langacker Law, Ltd., and for his Complaint against Defendants, Board of Education of Urbana School District #116, John H. Dimit, Benita Rollins-Gay, Anne Hall, Ruth Ann Fisher, Brenda Carter, Paul Poulosky, and Peggy Patton, in their individual capacities, hereby states as follows:

### JURISDICTION AND VENUE

1.  The jurisdiction of this Court is invoked pursuant to 775 ILCS 5/7A-102 (C-1). Prior to bringing this lawsuit, Plaintiff has exhausted all of his administrative remedies, having filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") in Charge No. 2019SF2466, on June 21, 2019. See Plaintiff's Exhibit A, attached hereto. Plaintiff requested and received a "Notice of Opt Out of IDHR's Investigative and Administrative Process, and of Right to Commence and Action in Circuit Court" form from the IDHR on August 27, 2019, true and correct copy of which is attached hereto as Plaintiff's Exhibit B.

2.  The venue of this Court to entertain the issues raised within this case is appropriate as the

Defendants engaged in their official activities within the judicial district of this Court and the claims giving rise to the above-captioned proceeding occurred within the judicial district of this Court.

**PARTIES**

3. Plaintiff, Dr. Donald D. Owen ("Dr. Owen"), was, at all relevant times herein, the Superintendent of the Urbana School District #116 ("School District"), and a full-time public employee of the Defendant, the Board of Education of the Urbana School District #116, and currently resides within this judicial district.

4. Defendant, the Board of Education of Urbana School District #116, ("Board"), is a municipal corporation organized and existing under the laws of the State of Illinois. The School District is located in within the judicial district in Champaign County, Illinois.

5. Pursuant to Section 10-10 of the Illinois School Code (105 ILCS 5/10-10), the Board is the duly constituted and elected governing body of the School District.

6. Defendant, John H. Dimit ("Dimit"), is an adult resident of the State of Illinois. At all times material to this action, Dimit was a duly elected member of the Board, and at all times stated herein, served as President of the Board.

7. Defendant, Benita Rollins-Gay ("Rollins-Gay") is an adult resident of the State of Illinois. At all times material to this action, Rollins-Gay was a duly elected member of the Board, and served as Vice President of the Board.

8. Defendant, Ruth Ann Fisher ("Fisher") is an adult resident of the State of Illinois. At all times material to this action, Fischer was a duly elected member of the Board, and at all times stated herein, served as Secretary of the Board.

9. Defendant, Brenda Carter ("Carter") is an adult resident of the State of Illinois. At all times

material to this action, Carter was a duly elected member of the Board.

10. Defendant, Anne Hall ("Hall") is an adult resident of the State of Illinois. At all times material to this action, Hall was a duly elected member of the Board.

11. Defendant, Paul Poulosky("Poulosky") is an adult resident of the State of Illinois. At all times material to this action, Poulosky was a duly elected member of the Board.

12. Defendant, Peggy Patton ("Patton") is an adult resident of the State of Illinois. At all times material to this action, Patton was a duly elected member of the Board.

## ALLEGATIONS COMMON TO ALL COUNTS

13. Dr. Owen has been an educator for over 30 years, and began his employment with the Urbana School District #116 in 1989. From 2013 until December 4, 2018, Dr. Owen was actively employed as the School District's Superintendent.

14. Defendant, Urbana School District #116, was an "Employer" and/or "Person" within the meaning of 2-101(B)(1)(a), 2-101(B)(1)(b), and 1-103(L) of the Illinois Human Rights Act, and was subject to the provisions of the Act.

15. Among the duties of the School Board is the duty set forth in Section 10-21.4 of the Illinois School Code (105 ILCS 5/10-21.4) "to employ a superintendent who shall have charge of the administration of the schools under the direction of the board of education."

16. Under the Illinois School Code, the School Board makes all employment decisions pertaining to the superintendent. 105 ILCS 5/10–16.7.

17. On June 16, 2015, the Board and Dr. Owen entered into an employment contract whereby the Board hired and retained Dr. Owen as Superintendent of the School District. The 2015 Employment Contract had a term that commenced on July 1, 2015, and concluded on June 30, 2019.

3

18. The School Code requires a performance-based contract for superintendents that includes "the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the superintendent and such other information as the local school board may determine." 105 ILCS 5/10–23.8.

19. The 2015 Employment Contract entered into between the Board and Dr. Owen made reference to, and complied with, the requirements set forth in Section 10-23.8 of the Illinois School Code (105 ILCS 5/10-23.8). Specifically, the 2015 Employment Contract is a performance-based contract and which goals and indicators of student performance and academic improvement.

20. That throughout the course of his employment with Defendant, Dr. Owen performed his job duties in a satisfactory manner consistent with Defendant's standards.

21. During his tenure with the School District, Dr. Owen focused on issues concerning social justice and promoted initiatives to address the needs of a multicultural School District. Dr. Owen has been a passionate advocate for resolving issues related to racial and gender bias within the District. Notably, Dr. Owen was instrumental in instituting a restorative discipline process within the District after data revealed a significant disparity between the number and severity of punishments for students who were members of racial minorities.

22. In recent years, a pronounced racial disparity existed within the District between a student body composed primarily of racial minorities, and teachers who were predominantly white. In order to address this inequality, Dr. Owen, along with other members of the Administration, formed a Recruitment and Retention Committee in 2017 with the intention to recruit, retain, and develop teachers, faculty and staff who would reflect the demographics

4

of the student population in race, ethnicity, and spoken languages.

23. The effort of the administration to recruit and retain faculty and staff to more closely reflect the demographics of the district is expressed in Urbana School District Board Policy 5:10, entitled *Minority Recruitment:* "The District will attempt to recruit and hire minority employees. The implementation of this policy may include advertising openings in minority publications, participating in minority job fairs, and recruiting at colleges and universities with significant minority enrollments."

24. Though Dr. Owen and others members of District's Administration were committed to reducing the District's racial disparity, several District employees complained to individual Board members that minority candidates were being hired in violation of existing policy. One anonymous letter to the Board alleged that, "many people in the district feel that positions are being cut to hire people of color in order for the district to be more diverse." (Gains, Lee. "Audit Report Points to Problems in Urbana School Hiring Process." *The News-Gazette*. 15 November, 2018).

25. As a result of these complaints, the Board, without consulting with Dr. Owen or other members of Administration, commenced what became known as the hiring practices audit ("Audit") of specific District employees who had allegedly been hired in violation of the District's policies.

26. Around 30 District employees were audited with the suspicion they had been wrongfully hired by the District. The specific employees were selected for audit by individual members of the Board, without input from Administration.

27. ALL of the employees who were audited based on Board suspicion that they had been wrongfully hired were people of color: specifically, employees of African-American, Latino,

or Asian descent. No Caucasian individuals on the list of alleged wrongful hires.

28. When Dr. Owen became aware that the Audit was being conducted, Dr. Owen notified the Board that all the employees who had been selected were all people of color, and it appeared that the Board was targeting minority employees.

29. During the Board's closed session meeting on September 24, 2018, Dr. Owen stated that several building administrators had asked him about a review of the hiring of employees of color. Dr. Owen stated that he was very concerned about both the public perception and legal consequences of auditing individuals based on race. The Board President responded by stating that he wanted everyone in the meeting to know that, while the District was publicly calling the record review an "audit," in his mind, it was an "investigation" of specific individuals.

30. At the conclusion of the September 24 Board meeting, it was discovered that there was no audio recording of the closed session meeting. Dr. Owen was told that the Recording Secretary had turned the recorder it off after public comment and failed to turn it back on.

31. On September 26, 2018, Dr. Owen expressed his concerns to Board Member Peggy Patton that word was now circulating that "there was a list that had the names of the black secretaries, but no white secretaries," who had been recently hired. Patton did not have a suggestion or response.

32. On October 16, 2018, Dr. Owen spoke to Board Vice President, Benita Rollins-Gay, and advised her of his concerns about public comment at the Board meeting on that date, based on the audit and the fact that employees in district offices were becoming aware that the Audit was based on a list of names containing only racial minorities, and that he was not able to answer any questions about the reason behind the Audit. Rollins-Gay stated that she wanted

Dr. Owen to direct all questions from the media to Anne Hall and Peggy Patton, because they were the two Board members behind the Audit.

33. Dr. Owen continued to express concerns about the Audit to members of the Board; specifically, that the way the Audit had been conducted violated the collective civil rights of a protected class of employees. The Board attempted to keep the Audit from becoming public knowledge due to concern about public perception.

34. On November 8, 2018, Dr. Owen had a regularly scheduled meeting with Board Member Paul Poulosky. Dr. Owen again reiterated his concerns about the Audit. Poulosky mentioned that the entire process was handled poorly from both Board and attorney actions. Later in the meeting, Poulosky stated that he needed to get in touch with Board Member Anne Hall right away and tell her to delete all of the texts between them.

35. On November 12, 2018, Dr. Owen electronically presented the Board with a Memorandum detailing his specific concerns regarding the Audit. See Exhibit C, attached hereto.

36. Within the Memorandum, Dr. Owen unequivocally stated that there was a perception that the Board was investigating only a small percentage of the total District hires, and because the individuals whose hiring had been questioned were all employees of color, the Audit was problematic—especially since the District had previously committed to increasing the recruitment and retention of faculty and staff of color.

37. At the November 20, 2018 executive Board meeting, eight days after providing the Board with the Memorandum, Dr. Owen was verbally notified that he would be placed on paid administrative leave for the remainder of the term of his contract, and that Dr. Preston Williams would be named as Interim Superintendent on December 4, 2019.

38. On December 4, 2019, the Board voted to place Dr. Owen on administrative leave for the

remaining term of his Contract. Five Board members (Dimit, Poulosky, Hall, Patten, and Carter) voted in favor of Dr. Owen being placed on leave, with two board members (Rollins-Gay and Fischer) opposed. Two other Administrators who had also been instrumental in the promotion of racial diversity within the District, Assistant Superintendents Katherine Barbour and Samuel Byndom, were also placed on administrative leave by the Board on that date. At the conclusion of the meeting, Rollins-Gay announced she would not be running for another Board term in 2019. Dr. Owen was not provided with a reason for having been placed on administrative leave.

39. On February 24, 2019, the Board notified Dr. Owen by certified mail that they would not be renewing his employment contract with the District. The Board affirmed their decision on May 6, 2019.

## COUNT I
## (Retaliation—Illinois Human Rights Act/Title VII of the Federal Civil Rights Act)

40.  Plaintiff repeats and re-alleges all paragraphs in this Complaint as if fully set forth herein.

41. The Illinois Human Rights Act ("IHRA") and Title VII of the Civil Rights Act forbids retaliation against anyone who has opposed any practice made an unlawful employment practice by Title VII or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C.A. § 2000e-3(a).

42. Moreover, it is a civil rights violation to retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, 775 ILCS 5/6-101 and/or 42 U.S.C.A. § 2000e-3(a).

8

43. Plaintiff engaged in a protected activity pursuant to Section 6-101(A) of the Act and 42 U.S.C.A. § 2000e-3(a) as stated *infra*, as Plaintiff opposed a practice which he believed constituted unlawful discrimination.

44. Plaintiff has suffered an adverse employment action, as he was placed on administrative leave for the remainder of his contract term shortly after advising the Board of his opposition to the discriminatory practices, and his employment contract was not renewed.

45. That a causal nexus exists between Plaintiff's protected activity and the adverse employment action by the Defendants.

46. That as a direct and proximate result of the Defendants' foregoing conduct, Plaintiff sustained the loss of certain economic benefits derived through his position with the School District, as well as his subsequent inability to secure employment. Additionally, Plaintiff suffered emotional pain and anguish, damage to his reputation, embarrassment, inconvenience, and the loss of enjoyment of life, as well as attorneys' fees and costs of suit.

WHEREFORE, Plaintiff, Dr. Donald D. Owen, respectfully requests that this Court enter the following relief:

A. Award Plaintiff damages sufficient to compensate him for any economic losses suffered as a result of conduct alleged in the Complaint;

B. Assess against Defendants all incidental and consequential damages, the costs and expenses incurred by Plaintiff in maintaining the above-captioned proceedings together with reasonable attorney's fees incurred by Plaintiff in prosecuting the above-captioned case;

C. Award against Defendants and in favor of Plaintiff such compensatory and exemplary damages as may be permitted by law;

D. Enter a declaratory judgment determining that the actions complained of in this Complaint

are unlawful and in violation of the provisions of state and federal law, and issue a mandatory injunction against Defendants to refrain from engaging in any actions with respect to the Plaintiff which are prohibited under the terms of the foregoing laws;

E. Issue a mandatory injunction directing the Defendants to reinstate Plaintiff to the position of employment which he held prior to the conduct complained of in this Complaint with all employment duties, responsibilities, salaries, benefits and rights attendant to that position;

F. Award punitive damages against Defendants, John H. Dimit, Benita Rollins-Gay, Anne Hall, Ruth Ann Fisher, Brenda Carter, Paul Poulosky, and Peggy Patton, in their individual capacities;

G. For all further relief the court deems equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY.

Dr. DONALD D. OWEN,
PLAINTIFF

By: /s/Ronald S. Langacker
Ronald S. Langacker
Attorney for Plaintiff

Ronald S. Langacker
Langacker Law, Ltd.
210 N. Broadway Ave.
Urbana, Illinois 61801
(217) 954-1025
ron@langackerlaw.com

*Control # 19M062104*

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER: |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form. | ✓ IDHR | 2019SF2466 |
| # | ✓ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) | |
|---|---|---|
| Dr. Donald Owen | (217) 493-2056 | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| c/o 210 N. Broadway | Urbana, Illinois 61801 | 6 / 21 / 1966 M  D  YEAR |

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)**

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (Include area code) |
|---|---|---|
| Urbana School District #116 | | (217) 384-3600 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 205 N. Race Street | Urbana, Illinois 61801 | Champaign |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Retaliation | 8/1/2018 - 2/24/2019 |
| | ✓ CONTINUING ACTION |

**THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:**

See Attachment.

# RECEIVED

JUN 2 1 2019

Dept. of Human Rights
Springfield

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME THIS 19th DAY OF June 2019. Jessica Wise NOTARY SIGNATURE |
|---|---|

| JESSICA WISE "OFFICIAL SEAL" My Commission Expires July 30, 2020 NOTARY STAMP | X Paul D. Ow 6/19/2019 SIGNATURE OF COMPLAINANT    DATE |
|---|---|
| | I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

EEO-5 FORM (Rev.  /09-INT)

# Exhibit A

## ISSUES COMMON TO ALL COUNTS

1. That at the time of the incidents complained of herein, Respondent, Urbana School District #116, was an "Employer" and/or "Person" within the meaning of 2-101(B)(1)(a), 2-101(B)(1)(b), and 1-103(L) of the Act, and was subject to the provisions of the Act.

2. That the Complainant, Dr. Donald Owen, was previously employed full-time with the Respondent in Urbana, Champaign County, Illinois, as the District Superintendent. As the Superintendent, Complainant was hired pursuant to an employment contract that commenced July 1, 2015, and was set to terminate on June 30, 2019.

3. That throughout the course of his employment with Respondent, Complainant performed his duties in a satisfactory manner consistent with Respondent's standards. Additionally, during the course of his employment, Complainant promoted initiatives to meet the needs of a multicultural School District.

4. In August of 2018, the Board of Education ("Board"), on their own volition, conducted a hiring practices audit ("Audit") of specific District employee personnel files where it was alleged that procedure was not followed during the individual's hiring process.

5. Complainant noted that ALL of the individuals the Board alleged to have been hired in violation of procedure were people of color (specifically Black, Latino, or Asian).

6. During closed session on September 24, 2018, Complainant stated to the Board that several building administrators had asked him about the "investigation" that had been taken into the hiring of faculty and staff of color. Complainant stated that he was very concerned about the public perception and the legal consequences of auditing individual personnel files based on race. The Board President responded by stating that he wanted everyone in the meeting to know that, while the District was publicly calling the record review an "audit," in his mind, it was an "investigation" of specific individuals.

7. At the end of the September 24 meeting, it was discovered that there was no audio recording of the closed session meeting. Complainant asked why there was no recording of the executive session, and was told that the Recording Secretary had turned the recorder it off after public comment and failed to or turn it back on.

8. Complainant continued to express his concerns about the Audit to members of the Board. Complainant was concerned that the way the Audit was conducted had violated the civil rights of a protected class of employees, or at a minimum, created a hostile workplace for District employees of color.

9. As rumors of the Audit spread throughout the District, Complainant the Board that he would continue to state that this was an audit related to a Board study session conducted earlier in the year. Despite Complainant's repeated requests for assistance, Board members provided Complainant with no direction.

10. On November 12, 2018, Complainant presented the Board with a Memorandum detailing his specific concerns regarding the Audit. See Exhibit A, attached hereto. Within the Memorandum, Complainant explicitly stated that there was a perception that the Board was investigating only a small percentage of the total District hires, and that since the individuals whose hiring is being are all or almost all employees of color, the Audit was problematic—especially when the District had previously committed to increasing the recruitment and retention of faculty and staff of color.

11. At the November 20, 2018 executive Board meeting, Complainant was verbally notified that the Board would craft a separation agreement between Complainant and the District by December 1, 2018. The Board also advised Complainant that Dr. Preston Williams would be named as Interim Superintendent on December 4, 2019.

12. When the parties were unable to reach an agreement on Complainant's separation, the Board placed Complainant on administrative leave for the remainder of his contract. Two other Urbana School District #116 administrators, Samuel Byndom and Kathleen Barbour, were also placed on administrative leave.

13. On February 24, 2019, Complainant was formally notified that the Board would not be renewing his employment contract with the District.

## ISSUE/BASIS: RETALIATION

1. Title VII forbids retaliation against anyone who has opposed any practice made an unlawful employment practice by Title VII or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C.A. § 2000e-3(a).

2. Moreover, it is a civil rights violation to Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, 775 ILCS 5/6-101 and/or 42 U.S.C.A. § 2000e-3(a).

3. Complainant engaged in a protected activity pursuant to Section 6-101(A) of the Act as stated *infra,* as Complainant opposed a practice which he believed constituted unlawful discrimination.

4. Complainant has suffered an adverse employment action, as he was placed on leave shortly after advising the Board of his opposition to the discriminatory practices, and his contract as Superintendent was not renewed as a result.

5. That a causal nexus exists between Complainant's protected activity and the adverse employment action.

6. That the Complainant has suffered damages as a result of the Respondent's actions.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| DONALD OWEN | ) |
| | ) |
| Complainant, | ) Charge No.: 2019SF2466 |
| | ) EEOC No.: 21BA91421 |
| and | ) |
| | ) |
| URBANA SCHOOL DISTRICT #116 | ) |
| | ) |
| Respondent. | ) |

## NOTICE OF OPT OUT OF IDHR'S INVESTIGATIVE AND ADMINISTRATIVE PROCESS, AND OF RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT

TO:     DONALD OWEN                          URBANA SCHOOL DISTRICT #116
        C/O RON LANGACKER                    C/O SUSAN E. NICHOLAS
        LANGACKER LAW                        ROBBINS, SCHWARTZ, NOCHOLAS,
        210 NORTH BROADWAY                   LIFTON & TAYLOR, LTD.
        URBANA, IL 61801                     301 N. NEIL STREET, SUITE 400
                                             CHAMPAIGN, IL 61820

**Date Perfected Charge Filed:** 6/19/19
**Date Opt Out Request Filed:** 8/23/19

The above-captioned Charge having been filed with the Department of Human Rights ("IDHR") by Complainant against Respondent, and Complainant having filed a written request to opt out of the investigation and administrative processing of the above-captioned Charge pursuant to Section 7A-102(C-1) of the Human Rights Act (775 ILCS 5/7A-102(C-1));

You are hereby NOTIFIED that Complainant has 95 days from the date of this Notice below to commence an action in the appropriate circuit court. If Complainant chooses to commence an action in the appropriate circuit court, be advised that:

- Complainant must notify IDHR and Respondent that a complaint has been filed, and must mail a copy of the complaint to IDHR and to Respondent on the same day the complaint is filed.
- The Appellate Courts in Watkins v. Office of the State Public Defender,  Ill.App.3d  , 976 N.E.2d 387 (1st Dist. 2012), and Lynch v. Department of Transportation,  Ill.App.3d  , 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act against the State of Illinois in the Illinois Circuit Court are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.
- IDHR shall continue to investigate and process the above-identified charge in accordance with IDHR's Rules and Regulations until IDHR receives notice from Complainant that Complainant has filed a complaint with the appropriate circuit court.

**ENTERED THIS 27TH DAY OF AUGUST 2019.**
**JAMES L. BENNETT, DIRECTOR**

BY: Brent A. Hauyman / Kg/
Manager, Charge Processing Division

# Exhibit B



**Urbana School District 116**

Jean F. Burkholder
Administrative Service Center
www.usd116.org

Donald D. Owen, Ed.D
Superintendent of Schools
217-384-3600
Fax 217-337-4973

205 North Race Street
P.O. Box 3039
Urbana  •  Illinois  •  61803-3039

**MEMO**

TO:        Urbana School District #116 Board of Education
FROM:   Donald Owen, Superintendent
RE:        Hiring Practices Audit Concerns
DATE:    November 12, 2018

Recent events have compelled me to put my concerns about the Hiring Practices "Audit" conducted by the BOE in August, September, and October, in writing. I have voiced my concerns many times, and I am disheartened that board members have ignored those concerns. One of my duties is to ensure that the policies and practices of the district are being followed. Typically and historically, that work is in partnership and collaboration with the BOE. The BOE, to this day, has not clearly or consistently explained the purpose or reason for the Hiring Practices Audit.  The implementation, findings, and recommendations all need to be carefully critiqued before any action is taken.  If the BOE wants to conduct a valid and reliable audit of the hiring practices, then I suggest that the board hire an independent and reputable firm and provide clear goals and purpose for the audit.

On August 28 at 4PM, Board President John Dimit and Board Member Paul Poulosky entered my office with attorney Dennis Weedman to conduct what was called an "audit" of specific personnel files.  Attorney Susan Nicholas accompanied two secretaries into various areas of the office building and was heard stating, "we are not leaving today until we have all of the hiring paperwork for the individuals on this list." Katherine Barbour, Jacinda Crawmer, Lori Johnson, Candace Zeigler, and Teresa Fewkes were called in to my office to meet with the two BOE members and attorneys.  We were all instructed not to say anything to anyone outside of the room, and told that only these individuals were to work on the "audit."  I offered any and all support to the attorneys.

After the others had left, I had a private conversation with Dennis Weedman, who indicated that he was in an awkward position. I pointed out that all of the names on the list were employees who were all people of color (either Black, Latino, or Asian).  Dennis Weedman assured me that this was just an audit, and knowing what he knew about our practices and procedures, we didn't have anything to worry about.  I inquired what the result of the audit would be, and Dennis indicated that it would be determined by the Board at a later date.  Dennis could not tell me if the audit would produce a written report with recommendations or just a cursory review of records.

# Exhibit C

On September 24 at 6PM, during the follow up Circle with the BOE, I stated that several building administrators had been asking me about the "investigation" into the hiring of faculty and staff of color.  I replied to the administrators that it was an audit being conducted by the BOE as a follow up to the BOE study session on August 2, 2018. I also stated to the BOE that I was very concerned about, not only the public perception, but also the legal consequences of auditing the specific files of individuals based on race, which is a protected class.  BOE President Dimit stated that he wanted everyone in the room to know that, while we were publicly calling this an "audit," in his mind, it was an "investigation" of specific records and individuals.  He also stated that he hoped the result of the investigation would either restore trust or bring clarity on a direction forward.  I inquired what he meant by that statement, and he stated loudly that he would not be pressured to "resign" as a result of this issue.  I stated that I had no interest in him resigning, and I had not suggested that. At the end of the meeting, the audio recording device was off, and there was no audio recording of the meeting.  I inquired of several BOE members and the BOE Recording Secretary why there was no recording of that executive session, and I was told it was the BOE Recording Secretary turned it off after public comment, and failed to tell anyone, or turn it back on herself.

From September 26 through today, I continued to express my concerns to members of the BOE about the following issues related to the audit:
- The purpose of and reason for the audit was never clearly or consistently stated.
- The names of all of the employees on the original list were all people of color, which potentially violates the civil rights or a protected class of employees, or at a minimum creates a hostile workplace for employees of color.
- The process by which the audit was introduced (a surprise interrogation which was overheard by many CO clerical and administrative staff) created suspicion and intrigue throughout the district.
- Mr. Dimit instructed the attorneys to specifically work with three people (Kathy Barbour, Jacinda Crawmer, and Teresa Fewkes) to gather information.  Attorney Susan Nicolas asked Lori Johnson for job descriptions and posting information, which led to at least three other individuals knowing details about the audit.
- Despite asking each BOE member, individually, specific questions about the reason for and purpose of the audit, I have not been given clear or consistent answers.

In addition to the concerns listed above, there are several other issues:
- Throughout the audit, attorneys Weedman and Nicolas continued to assure me that there were no substantive issues.
- No BOE members seem to want to take responsibility for the list of names on the original audit list; creating rumors and speculation about how and why those individuals were chosen to investigate.
- As rumors expanded and grew across the district, I notified BOE members that I would continue to state that this was an audit to follow up on BOE questions related to the August 2 Study Session. Despite my continued requests for assistance, BOE members provided me with no direction.
- When asked for comment from Illinois Public Media, I sent the request to BOE members and BOE attorneys.  It took over a week for the BOE attorneys to provide a statement, and that statement, "Because the hiring practices examination has not yet been completed, it is premature for the School District to provide a statement or to grant an interview at this time," is difficult for me to defend, because I have an email from Susan Nicolas dated October 19 titled, "DOCS - 797569 - Final audit report with exhibits.PDF."

The perception that the BOE is investigating the procedures and paperwork for a tiny percentage of our total hires, and that the individuals whose hiring is being are all or almost all employees of color, is very problematic, especially when the BOE, UEA, and District have all committed to increasing the recruitment and retention of faculty and staff of color.

I strongly encourage the BOE to hold themselves to the same standards which they have demanded from me. I respectfully request that the BOE be fully transparent and collaborative regarding the Hiring Practices Investigation.  I cannot answer the questions posed by administrators, teachers, and support staff, and I cannot answer the questions posed by the media.  If the BOE wants to conduct an audit of the District's recruitment and hiring practices, I suggest that the BOE issue an RFP for an independent agency to conduct an actual random audit of hiring policies and practices.  This process needs to be discussed in open session and with public input.